**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**
**THIRD DIVISION**

UNITED STATES OF AMERICA,                                  Criminal No. 07-219  JNE/AJB

                          Plaintiff,

v.                                                    **REPORT AND RECOMMENDATION**

(1)     JOSE DOLORES ALMADA-COTA,
(2)     VICTOR ARRIAGA VALVERDE,

                          Defendants.


        David Steinkamp, Esq., and Ann Anaya, Esq., Assistant United States Attorneys, for the
        plaintiff, United States of America;

        William G. Selman, III, Esq., for defendant Jose Dolores Almada-Cota; and

        Arthur R. Martinez, Esq., for defendant Victor Arriaga Valverde.


        This action came on for hearing before the Court, Magistrate Judge Arthur J. Boylan,

on September 12, 2007, at the U.S. Courthouse, 300 South Fourth Street, Minneapolis, MN   55415.

The court has issued separate Orders on Motions, dated September 13, 2007, and September 19,

2007, reserving defendants' motions for suppression of evidence and severance for submission to the

district court on report and recommendation.

        Based upon the file and documents contained therein, along testimony and exhibits

received at hearing, the magistrate judge makes the following:

**FINDINGS**

**Search Warrants**

**Residence and Vehicle.**  On May 28, 2007, Dakota County District Court Judge Timothy McManus issued a warrant to search a particularly described residence and a licensed vehicle located in Burnsville, Minnesota  (Hearing Exh. No. 8).  No specific person is identified with respect to ownership, use, or occupancy of the home or the vehicle.  The search warrant identified the objects of the warrant as cocaine and other drugs; money, valuables, and banking documents; address books; lock boxes and safes; items relating to drug sales and use; firearms, ammunition, and other weapons; documents indicating occupancy; and communications devices.  The warrant was issued on the basis of probable cause evidence contained in the affidavit of Ramsey County Deputy Sheriff Paul Meskan, assigned to the Minnesota Gang Strike Force as an investigator.  Evidence contained in the affidavit included information provided by a confidential reliable informant, along with evidence obtained through surveillance, canine drug alert, and vehicle traffic stop.  The warrant was executed with respect to the residence only on May 28, 2007, and items were seized pursuant to the warrant.

**Three Vehicles.**  On May 29, 2007, Ramsey County District Court Judge M.M. Monahan issued a warrant authorizing a search of three particularly described and licensed motor vehicles located in St. Paul, Minnesota  (Hearing Exh. No. 9).  One of the autos, a blue Chevrolet, was a subject of the May 28, 2007, warrant, and co-defendant Victor Arriaga Valverde was identified as a known driver of the vehicle.  A second vehicle, a white Corvette with Arizona plates, was parked in the garage at the residence that was searched on May 28, 2007, and the third vehicle, a black Pontiac Grand Prix, was parked in the driveway.  All three vehicles had been secured and towed from the residence.  The search warrant identified the objects of the warrant as cocaine and other drugs; money, valuables, and banking documents; address books; items relating to drug sales and use; firearms,

2

ammunition, and other weapons; documents indicating ownership; and communications devices.  The

warrant was issued on the basis of probable cause evidence contained in the affidavit of St. Paul Police

Officer Tim Pinoniemi, assigned to the Minnesota Gang Strike Force as an investigator.  Evidence

contained in the affidavit included information provided by a confidential informant, as well as evidence

obtained through surveillance and as a result of the May 28, 2007, search warrant execution.  The

warrant was executed on May 29, 2007, and evidence was seized pursuant to the warrant.

 **Bank Accounts.**  On June 1, 2007, Hennepin County District Court Judge Patricia

Belois issued a warrant authorizing a search of a particular numbered bank account at Wells Fargo

Bank in Minneapolis, Minnesota, as well as any other accounts under the names Jose D Almada or

Jose Dolores Cota  (Hearing Exh. No. 10).  The search warrant identified the objects of the warrant as

money and assets contained in or associated with such accounts.  The warrant was issued on the basis

of probable cause evidence contained in the affidavit of Ramsey County Deputy Sheriff Paul Meskan,

assigned to the Minnesota Gang Strike Force as an investigator.  Evidence contained in the affidavit

included information provided by a confidential reliable informant, along with evidence obtained through

surveillance, canine drug alert, and vehicle traffic stop.  In addition, the affidavit included information

obtained in the May 28, 2007, residence search and the execution of the vehicle search warrant on

May 29, 2007.  The bank account search warrant was executed on June 1, 2007, and financial assets

were seized and frozen pursuant to the warrant.

 **Arizona Search Warrants.**  On June 13, 2007, three separate search warrants were

issued in the District of Arizona by United States Magistrate Judge Michelle A. Burns.  The warrants

authorized the search of a particularly described business location in Phoenix, Arizona, identified in the

3

supporting affidavit as property owned by defendant Jose Dolores Almada Cota (Hearing Exh. No. 11); a particularly described residence in Phoenix, Arizona, identified in the supporting affidavit as property owned by defendant Jose Dolores Almada Cota (Hearing Exh. No. 12); and a particularly described Chrysler automobile, last seen at the above referenced residence in Phoenix, Arizona, and also identified in the supporting affidavit as a vehicle owned by defendant Jose Dolores Almada Cota (Hearing Exh. No. 13).  The three search warrants identified the same objects to be seized as being records and documents relating to the possession, manufacture, and sale of controlled substances; currency and valuables; records indicating ownership and possession of vehicles, personal property, and real estate; banking and financial records; documents indicating residency and vehicle registrations; drugs and drug manufacturing and packaging materials; firearms and ammunition; and communications devices.

Each of the warrants was issued on the basis of probable cause evidence contained in the identical affidavits FBI Special Agent David F. Williams.  Evidence contained in the affidavits included information obtained through search of records maintained by utilities and government agencies, reliable informant reports, pen register evidence, and surveillance by officers.  The affidavits further recited the evidence that was submitted in support of the previously issued Minnesota warrants, and extensively described evidence obtained in the execution of the Minnesota warrants.  In addition, the affidavits contained information obtained through interviews with a cooperating defendant, the owner of a vehicle shipping company, and defendant Almada-Cota.

**Detention**

Co-defendants Jose Dolores Almada-Cota and Victor Arriaga Valverde were arrested

4

on May 28, 2007,[1] and were detained at the Ramsey County Adult Detention Center (Hearing Exh.

Nos. 6 and 7).  An immigration detainer was placed on each of them by notices issued by ICE Special

Agent Paul Nichols, dated May 29, 2007 (Hearing Exh. 5).  Nichols is also a member of the Minnesota

Gang Strike Force and had been advised by other task force officers that the defendants were in

custody.  A federal criminal complaint was reviewed and signed by United States Magistrate Judge

Franklin L. Noel on May 30, 2007.  The defendants were presented to a federal magistrate judge for

initial hearing on May 31, 2007, at approximately 11:15 a.m., and a preliminary/detention hearing was

commenced before Magistrate Judge Noel at 10:30 a.m. on June 1, 2007.  Magistrate Judge Noel

made an express determination that Fed. R. Crim. P. 5 had been violated as the result of a failure to

timely present the defendants for an initial hearing before a magistrate judge or judicial officer (Hearing

Exh. No. 4).

**<u>Statements</u>**

Execution of the warrant to search the Burnsville residence commenced at

approximately 11:45 p.m. on May 28, 2007, and the search continued into the early morning of the

following day.  Minneapolis Police Officer Jose Gomez speaks Spanish and was present at the search

location.  At approximately 12:30 a.m. on May 29, 2007, Officer Gomez was contacted by Sgt. Miller

and asked to serve as an interpreter for purposes of questioning defendant Jose Dolores Almada-Cota

---

[1]  The defendants were arrested during execution of a search warrant which commenced at approximately 11:45 p.m. on May 28, 2007.  Testimony presented at the evidentiary hearing did not reveal the precise time at which the arrests took place, though it is apparent to the court that defendant Almada-Cota had been arrested before 12:30 a.m. on May 29, 2007, at which time he was in handcuffs and was given the <u>Miranda</u> warning in anticipation of questioning.  No evidence was presented at hearing with regard to the exact time of defendant Valverde's arrest.

who was present at the scene and had been arrested.  Officer Gomez met with the defendant in the southwest bedroom on the main floor of the residence and read the <u>Miranda</u> advisory to the defendant in Spanish from a pre-printed card.  Mr. Almada-Cota understood and expressly waived each of his rights, including his right to an attorney.  Sgt. Miller thereafter came into the room and the defendant gave statements in response to questions presented by Miller.  Officer Gomez translated the questions from English into Spanish and translated the defendant's responses from Spanish to English.  The interview lasted approximately 20 minutes.  During this time the defendant was in handcuffs and he sat on a bed.  He was not free to leave the scene.  Mr. Almada-Cota understood the questions put to him, he did not request that the interview stop, and he did not request the assistance of an attorney during questioning.  The defendant was not under the influence of drugs or alcohol, he did not request food or drink, and no threats or promises were made by officers to induce the defendant's statements or cooperation.  Before giving the rights warning the officer had turned on a micro cassette recorder which appeared to be functioning.  However, the following day it was discovered that the recorder was not working and no audio record of the interview was produced.

Defendant Almada-Cota was thereafter transported to the Ramsey County Jail and Sgt. Miller requested that Officer Gomez go to the jail with Officer Hentges to be available for further interviewing of the defendant.  At approximately 5:00 a.m. on May 29, 2007, Officer Gomez again met with Almada-Coda in an interview room.  The officer asked the defendant whether he still remembered his rights and the defendant stated that he did.  Again, the defendant agreed to make statements to officers; he did not request that the interview be stopped; and he did not request the assistance of an attorney.  No threats or promises were made to induce cooperation and the defendant understood the

6

questions and provided appropriate responses. The jail interview was also tape recorded, though a different recorder was used than the one that had been used at the residence. Nonetheless, this time an audible, but unintelligible recording was produced.

**Electronic Surveillance**

**Wiretap Applications, Authorizations, and Procedures.** On April 12, 2007, an Assistant United States Attorney for the District of Minnesota submitted an application for an order authorizing the interception of wire communications to United States District Court Chief Judge James M. Rosenbaum (Hearing Exh. No. 1).[2] The wiretap authorization was sought pursuant to 18 U.S.C. § 2518 and was requested as part of an FBI investigation into suspected drug distribution and money laundering activities by specifically identified individuals. The co-defendants whose motions are now before the court were not expressly named targets of the wiretap investigation.[3] The interception targets were believed to be involved in the possession and distribution of methamphetamine and cocaine into Minnesota. The wiretap application and order each recite the suspected statutory violations relating to the investigation. In addition, the application contains a description of the application procedures which have been followed pursuant to the requirements of 18 U.S.C. § 2516 and seeks permission to conduct telephone surveillance consistent with provisions of 18 U.S.C. §2518. The application further identifies the individual targets of the proposed surveillance and generally asserts

---

[2] Application for Interception (with attachments), Order Authorizing the Interception, Sealing Application, and Sealing Order.

[3] Co-defendant Victor Arriaga Valverde does not challenge the electronic surveillance, and co-defendant Jose Dolores Almada-Cota does not expressly acknowledge his participation in any intercepted calls.

the existence of probable cause as stated with particularity in an attached and incorporated affidavit of FBI Special Agent Julie A. Hunter.

The April 12, 2007, application requested authorization to intercept calls to and from cellular telephone number (612) 685-5456, uniform mobile fleet identifier number 104*21*31213 and international mobile station identity number 316010001766190, a Nextel/Sprint cell telephone assigned to Juan A. Ruiz, Minneapolis, Minnesota, and used by Jose Alfredo Ruiz, aka Primo  (Target Telephone #1).  Authorization was granted by Chief Judge Rosenbaum on April 12, 2007, and the Court's Order permitted interceptions for a period of 30 days commencing on the date of first interception, but not more than 10 days after issuance of the Order.  The Order further provided that wiretaps be conducted in a manner that minimized the interception of communications not pertinent to the investigation and that interim reports indicating progress and need for continued interception be submitted to the Court on ten-day intervals.  Periodic meetings with the district court were held and interim progress reports pursuant to the Order were timely provided to the Court.  The wiretap authorizing order on telephone number (612) 685-5456 (Target Telephone #1) was allowed to expire after 30 days (although intercept authorization was thereafter renewed pursuant to application and authorizing order issued on May 14, 2007.)   The authorizing order expired and interceptions ceased on May 12, 2007.  DVD recordings of all intercepted conversations were sealed within ten days after wiretapping ceased pursuant to Sealing Application and Sealing Order issued May 15, 2007.

Another Assistant United States Attorney for the District of Minnesota submitted a second application for an order authorizing the interception of wire communications to United States District Court Chief Judge James M. Rosenbaum on May 14, 2007.  This wiretap order was requested

on the basis of the same statutory authority and as part of the same investigation as the prior April 12,

2007, Order.  The May 14, 2007, application also asserts the existence of probable cause as stated

with particularity in an attached affidavit of FBI Special Agent Julie Hunter.  The second application

identifies the same individuals as targets of the proposed surveillance, though some target individuals are

added.

           The May 14, 2007, application (Hearing Exh. No. 4) again requested authorization to

intercept calls to and from cellular telephone number (612) 685-5456, uniform mobile fleet identifier

number 104*21*31213 and international mobile station identity number 316010001766190, a

Nextel/Sprint cell telephone assigned to Juan A. Ruiz, Minneapolis, Minnesota, and used by Jose

Alfredo Ruiz, aka Primo  (Target Telephone #1).[4]  Authorization was granted by Chief Judge

Rosenbaum on May 14, 2007, and the Court's Order permitted interceptions for a period of 30 days

commencing on the date of first interception, but not more than 10 days after issuance of the Order.

The Order further provided that wiretaps be conducted in a manner that minimized the interception of

communications not pertinent to the investigation and that interim reports describing progress to date

and the need for continued interceptions be submitted to the Court on ten day intervals.  Interim reports

were provided as required and the Order authorizing a wiretap on the target telephone number was not

extended beyond the 30 day period ending on June 12, 2007.  Again, DVD recordings of all

intercepted conversations were sealed within ten days after wiretapping pursuant to this warrant ceased

pursuant to Sealing Application and Sealing Order issued June 12, 2007.

---

    [4]  Application for Interception (with attachments), Order Authorizing the Interception, Sealing
Application, and Sealing Order.

Both of the above-described intercept applications were separately authorized by a specifically designated Deputy Assistant Attorney General in the Criminal Division of the United States Department of Justice.  The interception applications requested wiretap permission only until attainment of the authorized objectives and in no event more than thirty days beyond time of commencement.  The target phone was not monitored in excess of the thirty day time limitation as prescribed by the applicable Order Authorizing the Interception of Wire Communications.  The applications described attainment objectives as the interception of communications which reveal the manner and scope in which target telephones are used to facilitate the possession and distribution of drugs, along with information indicating the location of contraband and distribution activities, the nature and scope of conspiracy, the manner of transporting drugs, and the disposition of proceeds.

**Minimization.**  Prior to commencing telephone interceptions in this investigation, the monitors, law enforcement agents, contract agents, and interpreters[5] were given instructions regarding rules and standards of minimization.  Minimization procedures are intended to prevent unnecessary monitoring of innocent conversations by requiring monitors to determine the discussion's relevance to the investigation within the first two minutes of the call.  The monitors were required to immediately cease surveillance of apparently non-pertinent calls, but were permitted to make periodic spot checks to determine whether a call may have become pertinent.  A minimization memorandum (Hearing Exh. No. 3) was prepared for review by telephone monitors and agents.  Personnel who began participating in surveillance after initial commencement of wiretapping were given minimization instructions on an

---

[5]  Agents anticipated that many of the intercepted phone conversations would be in the Spanish language.

individual basis.  All surveillance personnel were required to read the minimization memorandum, and to thoroughly review the wiretap application, supporting affidavit, and authorizing order.

During the entire period of monitoring pursuant to both the first and second wiretap authorizations, a total of 5965 calls were intercepted on the target telephone, (612) 685-5456 (Hearing Exh. No. 14).  361 calls were deemed pertinent; 766 calls were over 2 minutes in duration; 534 calls were minimized; 341 calls over 2 minutes in duration were minimized; and 161 calls longer that 2 minutes in duration were pertinent.  Wiretap subjects sometimes used code words and coded language to disguise the substance of their conversations.

**Alternative Investigative Techniques.**  The affidavits of FBI Special Agent Julie Hunter that were submitted in support of the two wiretap applications both described various conventional investigative techniques which were used in the investigation prior to submitting the particular application for wiretap authorization.  Investigation methods, information sources, and incidents that were exploited by the affiant and other investigators included cooperating defendants and confidential informants, physical surveillance, search warrants, pen registers, trash searches, and review of financial records of suspects.   In addition, the May 14, 2007, affidavit of FBI Special Agent Julie Hunter cited the prior Title III wiretap in this case and referenced information obtained pursuant to previous intercepts.  The conventional techniques and previous wiretap had not proven to be entirely successful with regard to providing evidence on the full scope of the suspected illegal drug organization, exposing the identities and roles of persons involved in the suspected drug business and the organization's period of operation, and revealing revenues and the disposition of money received or the existence of assets held in fictitious names.  Cooperating individuals and informants had provided some

information, but the evidence was not considered sufficiently specific to obtain indictments or

convictions, and informants had not been able to infiltrate the higher organizational levels.  In addition,

those individuals feared physical retaliation and were therefore averse to testifying.  In particular, agents

felt that a certain informant was not sufficiently trusted within the drug organization to be given detailed

information.  The ability to use undercover agents was limited because the organization was small and

tight-knit.  Surveillance was conducted and had produced some information, but did not allow the

immediate physical presence necessary to see or hear conversations actually taking place and subjects

were sensitive to surveillance and used counter-surveillance tactics.  Furthermore, it was feared that

continued surveillance might compromise the investigation and the safety of an informant.  Search

warrants were executed but were not entirely effective because evidence obtained was insufficiently

specific as to the conduct and scope of the conspiracy, and there was substantial difficulty in isolating

particular locations to be searched and simultaneously executing multiple warrants.  Pen registers were

used and provided circumstantial evidence of contacts, but did not provide direct evidence on the

identities of callers or the substance of the communications.  Trash searches were conducted, but with

limited results, particularly with respect to drug quantities; grand jury subpoenas were not considered a

useful investigative tool because of the probability that subject interviews and use of subpoenas would

compromise the broader investigation; consensual recordings were not used, largely because of the

reluctance of informants; and review of financial records and transactions had been conducted but

would not provide means of proving drug trafficking.  With respect to the Affidavit of Julie Hunter in

support of the second wiretap authorization, the affiant cited evidence obtained through the prior

electronic surveillance, but indicated that the requested additional electronic surveillance was necessary

to fully develop the necessary evidence of violations and persons involved in the offenses, known and unknown.

Based upon the foregoing Findings, the Magistrate Judge makes the following:

## CONCLUSIONS

**Severance.**  Pretrial severance of this action for separate trials of co-defendants is not required.  Defendant Jose Dolores Almada-Cota has not made the requisite showing in this case that severance is necessary to avoid risk of compromising any specific trial right to which a defendant is entitled or that severance is necessary to prevent the jury from making a reliable judgment as to the moving defendant's guilt or innocence.

Two or more defendants may be charged in the same indictment if they are alleged to have participated in the same transaction or series of incidents constituting an offense or offenses. Fed. R. Crim. P. 8(b).  There is a preference in the federal system for joint trials of defendants who are indicted together. Zafiro v. United States, 506 U.S. 534, 113 S.Ct. 933, 937 (1993).  The co-defendants in this matter have been indicted on charges of conspiracy to distribute and possess controlled substances.  Under these circumstances, the general rule in the federal system is that the co-defendants should be tried together.  The court may grant a severance of defendants if it appears that a defendant is prejudiced by a joinder of defendants at trial.  Fed. R. Crim. P. 14.   A court "should grant a severance under Rule 14 only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." Zafiro, 113 S.Ct. at 938.

In post-hearing memorandum on his oral motion for severance, defendant Jose Dolores

Almada-Cota asserts specific prejudice arising out of the likelihood that the co-defendant will argue and seek to introduce testimony exonerating himself and implicating Mr. Almada-Cota in charged offenses. Almada-Cota contends that the defenses are therefore irreconcilable, and he is thereby prejudiced by joined trial. However, defendant's position on severance rests largely upon speculation as to the presentation of evidence at trial and the present factual record in this case offers no compelling indication as to how this defendant is prejudiced by joinder with the other defendant in this case to the extent necessary to overcome the preference for joinder in cases of this nature. In any event it is certainly not an extraordinary occurrence that one defendant would be pointing the finger at another, and it is not patently apparent that a jury would be unable to distinguish and apply the evidence relating to one defendant from evidence relating to other defendants. Joinder of defendants in this case was not improper and severance is not required.

**Search Warrants.** Evidence seized pursuant to a warrant to search a particularly described residence and vehicle located in Burnsville, Minnesota (Hearing Exh. No. 8) was not unlawfully obtained in violation of the defendant's constitutional rights. The search warrant was issued on May 28, 2007, and was based upon sufficient probable cause as stated in the affidavit of Ramsey County Deputy Sheriff Paul Meskan, and as determined by Dakota County District Court Judge Timothy McManus. The warrant properly and sufficiently identified the location of the search and the items to be seized. The search warrant in this matter was lawfully issued and executed and there is no requirement for suppression of evidence seized pursuant to the warrant.

Evidence seized pursuant to a subsequent warrant to search three particularly identified vehicles located in St. Paul, Minnesota (Hearing Exh. No. 9) likewise was not unlawfully obtained in

14

violation of the defendant's constitutional rights.  The vehicle search warrant was issued on May 29, 2007, and was based upon sufficient probable cause as stated in the affidavit of St. Paul Police Officer Tim Pinoniemi, and as determined by Ramsey County District Court Judge M.M. Monahan.  The warrant properly and sufficiently identified the location of the search and the items to be seized.  The search warrant was lawfully issued and executed and there is no requirement for suppression of evidence seized pursuant to the warrant.

Finally, evidence seized pursuant to a warrant to search a particular numbered bank account at Wells Fargo Bank in Minneapolis, Minnesota, as well as any other accounts under the names Jose D Almada or Jose Dolores Cota  (Hearing Exh. No. 10), and evidence seized pursuant to federal warrants to search particularly identified locations in Arizona (Hearing Exh. Nos. 11, 12, and 13) was not unlawfully obtained in violation of the defendant's constitutional rights.  The bank account warrant was issued on May 30, 2007, and was based upon sufficient probable cause as stated in the affidavit of Ramsey County Deputy Sheriff Paul Meskan, and as determined by Hennepin County District Court Judge Patricia Belois.  The warrant properly and sufficiently identified the location and object of the search.  The warrant was lawfully issued and executed and there is no requirement for suppression of evidence seized pursuant to the bank warrant.  The three federal warrants were issued on June 13, 2007, and were based upon sufficient probable cause as stated in the identical affidavits FBI Special Agent David F. Williams and as determined by United States Magistrate Judge Michelle A. Burns.  The warrants properly and sufficiently identified the location and object of the search.  Each of the warrants was lawfully issued and executed and there is no requirement for suppression of evidence seized pursuant to any one or all of the warrants.

Defendant Jose Dolores Almada-Cota contends that probable cause was fatally inadequate to justify issuance of the warrant dated May 28, 2007, authorizing the search the Burnsville residence.  Defendant argues that various references to surveillance of an unknown male who had been observed at the residence and in a specified vehicle were insufficient to establish probable cause that drugs would be found at the residence, particularly since there was no allegation or information to indicate that drugs were being sold at the house or that drugs would be found there.  Defendant Almada-Cota also insists that subsequent warrants were lacking in probable cause because they relied upon evidence obtained as a result of the May 28, 2007, residence search to establish probable cause.

Though the initial warrant application (Hearing Exh. No. 8) relied upon several references to an unknown male, the affidavit sufficiently indicates that the unknown subject was the same person in each reference, and the cumulative evidence was sufficient to establish probable cause to justify issuance of a warrant to search an identified vehicle driven by the unknown subject.  In addition, the warrant affidavit established a sufficient nexus between the vehicle and the residence to justify issuance of a warrant to search the residence, based upon observation of the vehicle at the subject residence immediately prior to a suspected drug transaction that was observed by officers and confirmed as the result of a traffic stop of another vehicle.  In any event, the court finds no evidence or reason upon which to base a determination that officers did not execute the search warrant with a good faith belief that the warrant had been lawfully requested and issued.  The court therefore concludes that the residence warrant was executed in good faith and suppression of evidence obtained in the search is not required on that ground as well.  United States v. Koons, 300 F.3d 985, 992 (8th Cir. 2002)(citing United States v. Leon, 468 U.S. 897, 922, 104 S.Ct. 3405 (1984)).

16

With respect to the warrant issued May 29, 2007, authorizing the search of three particular vehicles, defendant Almada-Cota contends that probable cause did not exist because the evidentiary basis for the warrant was the result of conversations with a confidential informant in the course of executing the unlawful residence warrant, and because the informant's reliability was not established in the supporting affidavit. An informant's tip may be relied upon to establish probable cause if the totality of circumstances show the information to be reliable. United States v. Koons, 300 F.3d 985, 990. In this instance the affidavit indicated that all three of the subject vehicles had been parked at the prior search location and were secured as evidence. One of those vehicles, a blue Chevrolet, was subject to search under the prior warrant and observation of that vehicle's involvement in an apparent drug transaction, verified by a participant in the transaction, was recounted in the May 29, 2007, warrant affidavit. The informant indicated that the other vehicles had been used to transport drugs and money between Arizona and Minnesota. Under the totality of circumstances presented in this instance, probable cause existed to justify issuance of a warrant to search all three of the seized vehicles. Furthermore, the court again concludes that the warrant to search three vehicles was executed in good faith and suppression of evidence obtained in the vehicle searches is not required.

As to subsequent warrants to search bank accounts (Hearing Exh. No. 10) and Arizona locations (Hearing Exh. Nos. 11, 12, and 13), for reasons discussed above the warrant affiants did not improperly rely upon allegations contained in prior search warrant affidavits or evidence obtained in the execution of those warrants, and suppression of evidence obtained pursuant the bank account warrant and Arizona warrants is not required. Defendant argues that this evidence is fruit of the poisonous tree. Based upon the court's determinations in regard to the Minnesota residence and

vehicle search warrants, the court finds that probable cause existed for issuance of each of those warrants and there are no grounds for suppression of resulting evidence.

## Statements

Defendant Jose Dolores Almada-Cota's custodial statements to Officer Gomez in an interview immediately following his May 29, 2007, arrest, and statements made in a follow-up interview at the Ramsey County Jail, were provided voluntarily and were not obtained in violation of defendant's constitutional rights.  Defendant was properly advised and understood his rights pursuant to <u>Miranda</u> as they were given to him in Spanish, his native language.  He was not under the influence of drugs or alcohol and no threats or promises were made to induce him to make statements to the officer in either the first or second interview sessions.  In particular the Court declines to attach any significance to the failure of recording equipment and finds no evidence of police coercion, either directly or by implication, under the circumstances in this case.  Defendant Almada-Cota's motion to suppress interview statements should be denied.

## Electronic Surveillance

The government has asserted that defendant Almada-Cota lacks standing to challenge the wiretap warrants because he was not an investigation target and he does not admit taking part in an intercepted conversation.  The government indicates that it intends to introduce evidence obtained pursuant to wiretap warrants in its case against Mr. Almada-Cota, but also acknowledges that Mr. Almada-Cota was never positively identified as a participant in any intercepted call.  In essence, the government argues that the defendant does not have standing to move for suppression of possibly incriminating evidence unless he first incriminates himself.  Notwithstanding the government's standing

argument, under the circumstances of this case the court finds its appropriate to address the motion to suppress wiretap evidence on the content of the warrants and related materials rather than on standing.

Defendant has not made the required showing that the applications for electronic surveillance in this case were substantively deficient; that the wiretap surveillance as conducted in this instance did not satisfy the procedural requirements relating to the specification of offenses or identification of wiretap subjects as set forth at 18 U.S.C. 2518; that electronic surveillance was unnecessary in light of evidence already obtained and the availability of other investigative techniques; that the application and/or affidavit contained material misrepresentations; that insufficient probable cause evidence was recited; that monitors failed to minimize intercepted calls; or that interceptions continued after attainment of objectives.  Evidence obtained either directly or derivatively through interception of wire or oral communications should not be suppressed.

**Material Misrepresentations and Probable Cause.**  An application to engage in electronic surveillance must be reviewed in a practical and common sense fashion and broad discretion must be accorded to the decision to authorize a wiretap.  United States v. Garcia, 785 F.2d 214, 221 (8th Cir. 1986).  The information in the supporting affidavit must present a truthful showing of probable cause.  United States v. Falls, 34 F.2d 674, 681 (8th Cir. 1994)(citing Franks v. Delaware, 438 U.S. 154, 164-65, 98 S.Ct. 2674, 2680-81 (1978)).  A defendant has the burden of showing that wiretapping was unlawfully obtained or used.  Garcia at 222.  An application may be challenged through a showing that facts included in the affidavit are false or were made with reckless disregard for the truth, or that facts were omitted with intent to mislead or in reckless disregard to the whether the affidavit is misleading.  Falls at 681.  Defendant has neither shown nor effectively alleged that the

wiretap applications and affidavits in this matter contain any untruthful probable cause information or that material was otherwise presented or omitted with the intent or the effect of misleading the issuing judge.  Furthermore, defendant only generally asserts, in wholly conclusory fashion, that the affidavit contains insufficient probable cause evidence.   Indeed, he provides no particularized argument whatsoever with respect to the nature of any alleged deficiency in probable cause.

      **Necessity.**  In addition to providing a complete statement of facts and circumstances relating to the alleged offenses, the persons involved, and the type of communications sought to be intercepted, 18 U.S.C. § 2518(1)(b), a wiretap application must contain information which will justify a determination that conventional investigative techniques have been tried and have either failed or reasonably appear to be unlikely to succeed or are too dangerous.  18 U.S.C. § 2518(1)(c) and (3)(c).  United States v. Shaw, 94 F.3d 438, 441 (8th Cir. 1995).  This "necessity" requirement is imposed to ensure that wiretaps are not routinely employed at the initial step in the investigation and does not dictate that all possible investigative techniques be attempted before seeking wiretap authorization.  Id. at 441 (citing United States v. Macklin, 902 F.2d 1320, 1326 (8th Cir. 1990)).

      The separate affidavits of FBI Special Agent Julie Hunter, submitted in support of wiretap applications (Hearing Exh. Nos. 1 and 2), each provide a thorough description of other investigative methods that had already been used or considered.  The affidavits discuss the consideration and/or use of cooperating defendants and informants, undercover operations, consensual recordings, physical surveillance procedures, pen registers, search warrants, trash searches, grand jury subpoenas, and financial record reviews.  In addition, the affidavits describe the successes and limitations of various investigative techniques under the circumstances of this case.  The affidavits also

20

discuss particular difficulties with respect to informant fear of retaliation and difficulties in infiltrating the organization.  In addition, the affidavits stated that surveillance had been conducted, but did not allow the immediate physical presence necessary to see or hear illegal activities actually taking place; search warrants had been executed but were not particularly effective because of difficulty in isolating appropriate locations for searches and obtaining particularized information; pen registers had been used, but did not provide direct evidence on the identities of callers or the substance of the communications; trash searches had been used but did not reveal drug quantities; grand jury subpoenas were not felt to be effective tools or might compromise the investigation in this instance; consensual recordings were not used because of the unavailability of willing informants; and financial records had been reviewed but did not provide evidence of trafficking.  The wiretap was clearly not the initial step in the investigation in this case and the application and authorization are not in conflict with the "necessity" requirement.  United States v. Nguyen, 46 F.3d 781, 783 (8th Cir. 1995).  The government met its statutory obligation with respect to a statement of necessity and there is no showing that relevant affidavit statements were misleading in that regard.  Defendant challenges the necessity requirement in only the most general and conclusory terms, offering no particularized explanation regarding perceived deficiencies in alternative investigation efforts. Moreover, he makes no assertion that agents had attained the investigation objectives through alternative methods or that the wiretap investigation continued after the objectives had been reached.  Suppression of wiretap evidence is not justified on grounds that other investigative techniques were not sufficiently utilized or that the  government failed to cease electronic surveillance upon attainment of the investigation objectives.

   **Minimization.** 18 U.S.C. § 2518(5) requires that the government conduct electronic

surveillance in a manner that will minimize the interception of communications that are not otherwise

subject to interception.  Whether minimization efforts were properly conducted is a test of objective

reasonableness under the facts and circumstances of the case.  United States v. Padilla-Pena, 129 F.3d

457, 462 (8th Cir. 1997)(citing Scott v. United States, 436 U.S. 128, 137-38, 98 S.Ct. 1717, 1723-

24 (1978)).  Occasional interception of nonpertinent communications is not forbidden by 18 U.S.C. §

2518(5) and does not warrant suppression unless particular circumstances of the case otherwise justify

this severe sanction.   Padilla-Pena at 464.  In a case involving a wide-ranging conspiracy with many

participants, even an experienced monitor might experience difficulties in determining the relevancy of

uncompleted calls.  This is true whether calls are evaluated contemporaneously or after-the-fact.

Padilla-Pena at 464, citing Scott, 98 S.Ct. at 1724-25.

Each of the monitors assigned to the surveillance in this case was provided instructions

on the rules of minimization by an Assistant United States Attorney.  A minimization memorandum was

prepared and made available for reference purposes.  Monitors were instructed to terminate

surveillance immediately upon determination that the communication was not pertinent to the

investigation.  This determination was to be made within the first two minutes of the call.  Monitors were

to refrain from listening in on minimized calls but were permitted to conduct periodic spot checks to re-

evaluate the nature and course of extended conversations.

Defendant Almada-Cota generally alleges that certain sworn lay person interpreters

were not qualified to make required decisions on minimizing communications, but he offers absolutely

no evidence or argument to support the contention.  There is no direct evidence before the court to

support the claim that the government abused its authority by failing to properly minimize or that

22

measures taken to protect persons from improper electronic surveillance were not otherwise objectively reasonable.  Intercept monitors were properly instructed and supervised in regard to minimization procedures and the minimization rules were properly applied and followed.  Suppression of wiretap evidence for reasons relating to minimization is not required.

## Rule 5 Violation

Suppression of evidence as a remedy for the government's violation of Fed. R. Crim. P. 5 is not required in this instance.  Defendants Victor Arriaga Valverde and Jose Dolores Almada-Cota contend that evidence in this matter should be suppressed as a sanction for government's failure to promptly bring each of them before a federal magistrate judge following their arrests.  Magistrate Judge Noel previously made the determination that Fed. R. Crim. P. 5 was violated in this regard (Hearing Exh. No. 4),[6] but no decision was rendered regarding the consequence of the violations. Defendant Valverde generally asserts that all evidence should be suppressed while defendant Almada-Cota argues that evidence obtained subsequent to his initial detention, including statements, should be suppressed.  Both defendants contend that the delay was for purposes of collecting additional evidence to support their arrests, and Almada-Cota specifically argues that a primary reason for the delay was a need to obtain evidence tying him to the Corvette that was a subject of the May 29, 2007, vehicle search warrant.  The government, on the other hand, insists that no violation occurred as to either Rule 5 or the 48-hour probable cause review rule under Riverside v. McLaughlin, 500 U.S. 44, 56 (1991),[7]

---

[6]  Transcript of Preliminary/Detention Hearing held June 1, 2007, page 46.

[7]  In Riverside v. McLaughlin the Supreme Court held that the Fourth Amendment required a judicial review of probable cause for a warrantless arrest as soon a practically feasible, and that generally such judicial review of probable cause should take place within 48 hours of the arrest.

and in any event, exclusion of evidence in not an appropriate remedy. Defendants do not directly assert a constitutional violation under <u>Riverside v. McLaughlin</u>, but rely upon the magistrate judge's conclusion on the Rule 5 issue.

Defendants point the court to <u>United States v. Davis</u>, 174 F.3d 941 (8th Cir. 1999) as support for the proposition that evidence in this matter was unlawfully obtained and should be suppressed. In <u>Davis</u> the court held that a two-hour detention for the singular purpose of investigating further the possibility of other offenses was a violation of the Rule 5 mandate that a defendant be brought before a magistrate judge "without unnecessary delay" following arrest. Fed. R. Crim. P. 5(a)(1)(A). Statements are properly suppressed when obtained through questioning under such circumstances. <u>Id.</u> at 946. This result is merely a variation on the ruling in <u>Riverside v. McLaughlin</u> which limits officer's ability to detain persons for an unreasonably prolonged length of time for purposes of conducting investigation to justify the suspect's original arrest. <u>Davis</u> at 945.

The government now urges the court to re-examine the prior determination that there had been a Rule 5 violation, asserting that the magistrate judge's *sua sponte* finding relates to suppression issues which are not properly raised at a preliminary hearing and the finding is therefore *dicta*. The government further insists that no offense was committed with respect to either the 48-hour rule espoused in <u>Riverside v. McLaughlin</u> or the Rule 5 requirement for presentment to a judicial officer without unnecessary delay. The court herein finds that a determination as to whether there was an unlawful delay in bringing the defendants before a judicial officer is not necessary to a decision on the ultimate suppression issue in this matter and therefore declines to disturb the prior conclusion that Rule 5 was violated.

With respect to suppression of evidence the court finds that no evidence has been identified at being directly derivative of any excessive delay in presentment and therefore finds no grounds for suppression in that regard.  Defendant Valverde made no statements to officers but moves generally for suppression of all evidence and thereby essentially seeks dismissal of the indictment.  The court finds no authority for such broad relief.  Defendant Almada-Coda is somewhat more discriminating in seeking suppression of any evidence obtained subsequent to his initial detention, including his post-arrest statements and evidence seized pursuant to search warrants.

Evidence obtained prior to defendants' lawful arrests, including evidence submitted in support of the initial search warrant application, was wholly independent of a Rule 5 violation.  The May 28, 2007, search warrant was issued and its execution was commenced prior to the arrests and evidence seized pursuant to the warrant will not be construed to be a product of undue delay in presentment.  Likewise, Almada-Cota's initial statement during the warrant execution, as well as his interview statement at 5:00 a.m. on the same morning, were obtained prior to a time that the defendant could have reasonably been brought before a magistrate judge and were not the result of a Rule 5 violation.  Indeed, Rule 5 is not properly interpreted to "prevent[] police from investigating a detained suspect on the crime for which he or she was arrested, or for other unrelated charges, while the suspect is being booked or waiting for an available magistrate."  United States v. Davis, 174 F.3d 941, 945 n.7.  In addition, the application for a subsequent warrant to search vehicles did not reference statements by defendant Almada-Cota for purposes of establishing probable cause and therefore resulting evidence is not derivative of his arrest.  Although the application for a warrant to seize bank accounts and the federal warrants issued in Arizona did cite Almada-Cota's statements, the references

25

were ancillary and the affidavits in those instances did not rely on the statements to establish probable cause.  Under the circumstances in this case the court does not find that the unnecessary delay in bringing either defendant before the magistrate judge was for the singular purpose of investigating further the possibility of other offenses, for the purpose of conducting investigation to justify the suspect's original arrest,  Davis at 947, or for extending the interrogation period.  United States v. Burgard, 551 F.2d 190, 194-95 (8ᵗʰ Cir. 1977).  Furthermore, the subjective intent of officers is pertinent to consideration of the reasonableness and consequences of delay and there is no evidence that the delay in this instance was motivated by ill will towards either defendant, or that the delay was "delay for delay's sake."  Id. (citing Riverside v. McLaughlin, 500 U.S. at 56).  In light of the court's determination that none of the evidence here at issue is derived from the Rule 5 violation, and there is no indication that delay was a result of malice or improper investigatory motives of officers, defendants' motion to suppress evidence as a sanction for Fed. R. Crim. P. 5 violations should be denied.

Based upon the foregoing Findings and Conclusions, the Magistrate Judge makes the following:

## RECOMMENDATION

The Court **hereby recommends** that:

1.  Defendant Jose Dolores Almada-Cota's Motion to Suppress all Electronic Surveillance and any Evidence Derived therefrom be **denied** [Docket No. 35];

2.  Defendant Jose Dolores Almada-Cota's Motion to Suppress Evidence due to a Rule 5(a) Violation be **denied**  [Docket No. 36];

3.  Defendant Jose Dolores Almada-Cota's Motion to Suppress Statements,

Admissions and Answers be **denied** [Docket No. 37];

      4.   Defendant Jose Dolores Almada-Cota's Motion to Suppress Evidence Obtained as a Result of Search and Seizure be **denied** [Docket No. 38];

      5.   Defendant Victor Arriaga Valverde's Motion to Suppress Rule 5(a) Violation be **denied** [Docket No. 27];

      6.   Defendant Victor Arriaga Valverde's Motion to Suppress Evidence Obtained Pursuant to Search Warrant be **denied** [Docket No. 28]; and

      7.   Defendant Jose Dolores Almada-Cota's oral motion for severance of defendants be **denied** [No Docket No.].


Dated:   October 30, 2007

       s/ Arthur J. Boylan
      Arthur J. Boylan
      United States Magistrate Judge


      Pursuant to Local Rule 72.1(c)(2), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties, written objections which specifically identify the portions of the Report to which objections are made and the bases for each objection.  This Report and Recommendation does not constitute an order or judgment from the District Court and it is therefore not directly appealable to the Circuit Court of Appeals.  Written objections must be filed with the Court before November 14, 2007.

      Unless the parties stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections made to this Report and Recommendation, the party making the objections shall timely order and file a complete transcript of the hearing within ten days of receipt of the Report.